# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

UC FUNDING I, LP, TRUSTEE,
and UCF I TRUST 1,
    Plaintiffs,

v.

BERKOWITZ, TRAGER & TRAGER, LLC,
    Defendant.

No. 3:17-cv-1325 (VAB)

## RULING ON MOTION TO DISMISS

UCF I Trust 1 ("UCFT") and UC Funding I, L.P., Trustee ("UCF Trust") (together, "Plaintiffs") filed a Complaint against Berkowitz, Trager & Trager, LLC ("Berkowitz" or "Defendant"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation, based on an opinion letter authored by Berkowitz that allegedly induced Plaintiffs to enter into a contract that eventually resulted in a loss of approximately $13,000,000. Compl. ¶¶ 12, 25, ECF No. 1.

Berkowitz has moved to dismiss the Complaint, arguing that Plaintiffs' claims, for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation, all fail as a matter of law. Mot. Dismiss, ECF No. 14.

For the reasons discussed below, Defendant's motion to dismiss is **GRANTED**.

Plaintiffs may serve an Amended Complaint within thirty (30) days of this Order, to the extent they are able to address the deficiencies in the dismissed claims.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

UCFT, a Delaware statutory trust[1] with its principal place of business in Boston, Massachusetts, makes secured mezzanine loans.[2] Compl. ¶¶ 3–4. UCF Trust, a limited partnership with a principal place of business in Dover, Delaware, is the trustee of UCFT. *Id.* ¶ 5. Berkowitz, a Connecticut limited liability company, has its principal place of business in Westport, Connecticut. *Id.* ¶ 6.

### A. Factual Allegations

On November 1, 2012, UCFT allegedly loaned $12 million to Park Square West Member Associates ("the borrower") in the form of a mezzanine loan. Compl. ¶ 8. In connection with that loan, UCFT and the borrower entered into a loan agreement. *Id.* ¶ 9. Under that agreement, the borrower would be the 100% owner of Park Square West Member Associates, LLC ("the Park Square West LLC"), and the Park Square West LLC would own the commercial property known as Park Square West, located in Stamford, Connecticut, in fee simple. *Id.* ¶ 11. In addition,

---

[1] A statutory or business trust is "a form of business organization, a substitute for incorporation" that may act as a "device for profit making through the combination of capital contributed by a number of investors." Myron Kove et al., Bogert's Trust § 247. "In general terms, business or statutory trust[s] are used 'to denote an unincorporated organization created for profit under a written instrument or declaration of trust, the management to be conducted by compensated trustees for the benefit of persons whose legal interests are represented by transferable certificates of participation, or shares.'" *Cooper v. Trustees of College of Holy Cross*, 13-cv-8064 (KPF), 2014 WL 2738545, at *6 (S.D.N.Y. 2014) (quoting Myron Kove et al., Bogert's Trust § 247). In other words, the organization is not incorporated, and the Trustees are compensated. *Id.* (finding that Holy Cross was not a "business or statutory trust because the College has been incorporated and the Trustees are not compensated").

[2] In general terms, "[a] mortgage/mezzanine loan structure is a multiple loan structure in which a lender grants a mortgage loan to the owner of a property, and the same lender or a separate lender grants a mezzanine loan to the owner of the direct (or indirect) equity interests in the property owner." Mortgage and Asset Backed Securities Litigation Handbook § 8:35 (2017).

UCFT and the borrower entered into a Guaranty of Payment in favor of UCFT ("the guaranty"), secured by a pledge agreement and security agreement ("the pledge agreement"). *Id.* at 12.

Under the pledge agreement, the Park Square West LLC allegedly represented that it was the sole member of and owned 100% of the interest in Park Square West Member Associates. *Id.* ¶ 13. The Park Square West LLC's ownership interest in Park Square West Member Associates allegedly served as the collateral for the loan made by UCFT. *Id.* ¶ 14.

Plaintiffs allege that Berkowitz acted as counsel to various entities connected with the Park Square West Entities.[3] *Id.* ¶ 15. Plaintiffs allege that Berkowitz "issued an opinion letter addressed to UCFT concerning the PSW Mezzanine Loan, Guaranty, Pledge Agreement and the additional agreements memorializing the loan transaction set forth therein." *Id.* ¶ 16. Plaintiffs allege that in the letter, Berkowitz opined:

> 2. "Each of Borrower, Pledgor, and Subordinated Lender has all requisite limited liability company power and authority to execute and deliver the Loan Documents to which it is a party and to perform its obligations thereunder.
>
> 3. "The execution and delivery by Borrower, Pledgor, and Subordinated Lender of the Loan Documents to which each is a party, and the performance by Borrower, Pledgor, and Subordinated Lender of their respective obligations thereunder, have been duly authorized by all necessary limited liability company action on the

---

[3] The opinion letter states: "We [Berkowitz] have acted as counsel to Park Square West Member Associates, LLC, a Connecticut limited liability company ('Borrower') in connection with the loan by UCF I Trust 1, a Delaware statutory trust ('Lender'), to Borrower in the principal amount of $12,000,000.00 (the 'Loan'). We have also acted as counsel to Park Square West Associates, LLC, a Delaware limited liability company ('Associates'); PSWMA I, LLC, a Connecticut limited liability company ('Pledgor'); PSWMA II, LLC, a Connecticut limited liability company ('Subordinated Debtor'); Seaboard Realty, LLC, a Connecticut limited liability company ('Subordinated Lender'), and John J. DiMenna, Jr., an individual ('Guarantor')." Opinion Letter at 1, Mot. Dismiss Ex. A, ECF. No. 16-1. The letter also states that Berkowitz "examined and relied upon originals or copies, certified or otherwise identified to our satisfaction, of such agreements, documents, certificates, statements of government officials, statements from representatives of Borrower, Associates, Pledgor, Subordinated Debtor, and Subordinated Lender, and from Guarantor, and such other documents as we have deemed necessary as a basis for our opinion . . . ." *Id.*

> part of Borrower, Pledgor, and Subordinated Lender, as the case may be."
>
> 4. The Loan Documents to which each of Borrower, Pledgor, and Subordinated Lender is a party, have been duly executed and delivered by Borrower, Pledgor, and Subordinated Lender respectively, and constitute the valid and binding obligations of Borrower, Pledgor, and Subordinated Lender, enforceable against Borrower, Pledgor, and Subordinated Lender in accordance with their respective terms.
>
> 6. Neither the execution and delivery by Borrower, Pledgor, Guarantor, and Subordinated Lender of the respective Loan Documents to which each is a party, nor Borrower's, Pledgor's, Guarantor's, or Subordinated Lender's respective performances thereunder (a) to the best of our knowledge, will result in the creation or imposition of a lien, charge, or encumbrance upon any of the property or assets of Borrower, Pledgor, Guarantor, or Subordinated Lender other than the liens contemplated by the Loan Documents, (b) violates any federal or Connecticut law or regulation applicable to Borrower, Pledgor, Guarantor or Subordinated Lender or, to the best of our knowledge, any judgment, order, writ, injunction or decree binding on Borrower, Pledgor, Guarantor, or Subordinated lender or (c) violates the terms or provisions of the Articles of Organization or the Limited Liability Company Operating Agreement of Borrower, Pledgor, or Subordinated Lender."

*Id.* ¶ 17 (quoting "Opinion Letter Representations").

Plaintiffs allege that, after the mezzanine loan was funded, and following a default by the borrower, Plaintiffs discovered that the Park Square West LLC did not own a 100% interest in the borrower. *Id.* ¶ 18. Plaintiffs allege that the Park Square West LLC "appears to have owned nothing at the time it made the Pledge in favor of UCFT to secure the PSW Mezzanine Loan," and that the borrower was allegedly "owned 25% by Seaboard Realty, LLC and 75% by various other individuals and entities." *Id.* ¶ 19. Plaintiffs allege that UCFT relied on Berkowitz's opinion letter when they agreed to the mezzanine loan, and that "UCFT's reliance was expressly contemplated by Berkowitz as the Opinion Letter states that 'This opinion is rendered to you and is for your benefit in connection with the above transaction.'" *Id.* ¶ 21.

Plaintiffs allege that, in December 2015, Seaboard Realty, LLC, and its affiliate entities, including the Park Square West LLC, the borrower, filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. *Id.* ¶ 22 (citing *In re Newbury Common Associates, LLC*, Case No. 15-12507). Plaintiffs allege that "[t]hrough the bankruptcy case, the real estate owned by Park Square West Associates, LLC controlled Seaboard Realty LLC, was sold and purchased by an affiliate of UCFT for approximately $43 million." *Id.* ¶ 23. Plaintiffs also allege that because the Park Square West LLC did not own 100%, "UCFT's security interest did not attach to the 100% interest in PSW Mezzanine Borrower," and as a result, Plaintiffs lost more than $13,000,000. *Id.* ¶¶ 24–25.

### B. Procedural History

UCFT filed a Complaint in this Court on August 4, 2017, claiming breach of contract, breach of the covenant of good faith and fair dealing, and negligent misrepresentation against Berkowitz. *See generally* Compl.

On September 25, 2017, Berkowitz moved to dismiss, claiming that UCFT had failed to state a claim upon which relief can be granted because (1) UCFT was not Berkowitz's client; (2) a third party beneficiary of a written contract cannot recover for a breach of the implied covenant of good faith and fair dealing; and (3) UCFT's claim for negligent misrepresentation is barred by the statute of limitations. Mot. Dismiss at 1–2, ECF No. 14. Berkowitz argues that it "did not represent UCF, and in fact was adverse to UCF in its role representing Park Square West Member Associates, LLC as borrower and [Berkowitz's] other clients in connection with this transaction." Mot. Dismiss at 2. Berkowitz therefore claims that UCF cannot bring a claim based in contract related to Berkowitz's attorney-client relationship with the Park Square West Entities,

5

and any claim based in tort must fail because the applicable three-year statute of limitations has passed. *Id.* at 2, 6, 8, 15, 17.

Plaintiffs opposed the motion to dismiss. ECF No. 16. Plaintiffs argued that Berkowitz wrote an "opinion letter addressed to UCF concerning the PSW Mezzanine Loan, Guaranty, Pledge Agreement and the additional agreements memorializing the loan transaction set forth therein," which was allegedly "directed to UCF," after Berkowitz had allegedly "examined certain specific documents" and other documents Berkowitz had deemed necessary for its opinion. Opp. to Mot. Dismiss at 3. Moreover, Plaintiffs asserted, the "opinion was rendered for UCF's benefit and could be relied upon by UCF." *Id.* (citing Compl. at ¶¶ 20, 21, 27–30).

Plaintiffs explained that they "thereafter learned [that Berkowitz] was counsel to a company engaged in a Ponzi scheme." *Id.* As a result of the scheme, it was allegedly only after UCF funded the mezzanine loan and following a subsequent default by the borrower that "UCF learned that PSWMA I, LLC did ***not*** own a 100% interest in PSW Mezzanine Borrower." *Id.* (emphasis in original). Plaintiffs explain that in fact, "PSW Mezzanine Borrower was owned 25% by Seaboard Realty, LLC and 75% by various other individuals and entities." *Id.*

Plaintiffs argued that Berkowitz is liable to them for issuing a faulty opinion letter, which did not constitute advice to the PSW Entities, but rather to Plaintiffs. *Id.* at 5 (citing *Terremar, Inc. v. Ginsburg & Ginsberg et al.*, 1991 WL 57815, at *4 (Conn. Super. Ct. Apr. 5, 1991)). Plaintiffs argued that they were the intended third-party beneficiary of a contract between the PSW Entities and Berkowitz, and as a result, despite the absence of an attorney-client relationship between Berkowitz and Plaintiffs, Plaintiffs have a claim of breach of contract, as well as one for a breach of the covenant of good faith and fair dealing. *Id.* at 6–10.

Plaintiffs also argued that their negligent misrepresentation claim should not be barred by the statute of limitations because "PSW Entities did not file bankruptcy until December 2015," and the statute of limitations does not begin to run until "'two years *from the discovery of the misrepresentation*[.]'" *Id.* at 11 (quoting *Lopez v. Travelers Companies, Inc.*, 2016 WL 2890477, at *3 (Conn. Super. Ct. Apr. 26, 2016) (emphasis added in Plaintiffs' brief)). Plaintiffs argue, in other words, that because Berkowitz was "counsel to a fraudulent enterprise," including because Berkowitz "long represented John DiMenna Jr. and the PSW Entities, perpetrators of a Ponzi scheme," the Court should permit Plaintiffs to conduct discovery to determine whether any equitable doctrines apply to toll the statute of limitations on their claim. *Id.* at 12 (arguing that the Court should decline to address the statute of limitations issue to allow Plaintiffs to develop facts related to potential fraudulent concealment).

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and the court will dismiss any claim that fails "to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), the court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

7

679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

At this stage, the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views allegations in the light most favorable to the plaintiff, and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), cert. denied, 537 U.S. 1089 (2002).

## III. DISCUSSION

The Court addresses each of Plaintiffs' claims, breach of contract, breach of the covenant of good faith and fair dealing, and negligent misrepresentation, in turn.

### A. The Breach of Contract Claim

Plaintiffs allege that Berkowitz represented the Park Square West Entities in the loan transaction, and that "[a]s part of its promised performance, Berkowitz was required to prepare the Opinion Letter and provide accurate and verified information concerning the [Park Square West] Entities and the matters set forth therein, to be relied upon by UCFT in making the PSW Mezzanine Loan." *Id*. ¶¶ 27–28. UCFT also alleges that it was an "intended beneficiary of the contract between Berkowitz and the PSW Entities and thus has a right to enforcement thereof." *Id.* ¶ 29. Plaintiffs allege that "Berkowitz breached its contractual obligations as the Opinion Letter contained inaccurate information concerning the ownership of PSW Mezzanine Borrower and enforceability of the Pledge and Guaranty." *Id.* ¶ 30.

Berkowitz moves to dismiss, arguing that "[t]he breach of contract claim alleged in Count One fails to state a claim upon which relief may be granted because (1) as a non-client, UCF cannot maintain a cause of action for the breach of an agreement to provide legal services to which it was not a party and which it has not identified; and (2) the allegation in Count One is not premised on any facts, outside of negligence, that disclose the breach of a contractual duty that [Berkowitz] owed to UCF." Mot. Dismiss at 6. Berkowitz argues that "in the limited circumstances where Connecticut courts have held a claim for breach of contract for legal services exists, the claim has been asserted by a client, not a third party." *Id.* at 7–8. Here, Berkowitz argues, "[a]ny contract between [Berkowitz] and the PSW Entities concerns the legal services that [Berkowitz] was to *perform for the PSW Entities*." *Id.* at 8.

Under Connecticut law, a plaintiff may assert a claim against an attorney for negligence or for contract. *Caffery v. Stillman*, 79 Conn. App. 192, 197 (2003) (citing *Mac's Car City, Inc. v. DeNigris*, 18 Conn. App. 525, 529–30, cert. denied, 212 Conn. 807 (1989)). The statute of limitations for a negligence claim is three years, Conn. Gen. Stat. § 52-577, and the statute of limitations for a contract claim is six years, Conn. Gen. Stat. § 52-576(a).

"As a general rule, attorneys are not liable to persons other than their clients for the negligent rendering of services." *Krawczyk v. Stingle*, 208 Conn. 239, 244 (1988). There is an exception, however, when a third-party beneficiary to a contract can show that the defendant had a direct obligation to the third party. *See Stowe v. Smith*, 184 Conn. 194, 196–97 (1981) ("[A] third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party.") (citing *Byram Lumber & Supply Co. v. Page*, 109 Conn. 256, 259 (1929)). To determine whether the contracting parties intended for the promisor to assume a direct obligation to a third party,

"[c]ommentators generally look upon the intent of the promise, if the promise had any relevant intent, as governing whether a third party may enforce a contract as a done beneficiary." *Id.* at 197 n.1 (citations omitted).

Plaintiffs argue that a breach of contract claim exists because "(1) the Opinion Letter was a requirement of the Transaction, (2) without the Opinion Letter UCF would not have engaged in the Transaction, (3) [Berkowitz] rendered the Opinion Letter for the benefit of UCF, (4) the PSW Entitles and [Berkowitz] both intended for UCF to rely on the Opinion Letter as part of the Transaction, and (5) [Berkowitz] did not do what it contracted to do as set forth in the Opinion Letter." Opp. to Mot. Dismiss at 6. Plaintiffs also argue that Berkowitz wrote the Opinion Letter so that Plaintiffs would rely on it in entering into the mezzanine loan agreement, and that "there was no possibility of the issuance of the Opinion Letter affecting [Berkowitz's] attorney-client relationship" with the Park Square West Entities. *Id.* at 7 (citing Compl. ¶ 21).

Berkowitz responds that the opinion letter is not a contract, and that Plaintiffs therefore cannot claim to be third-party beneficiaries of it. Def.'s Reply at 2, ECF No. 22. Plaintiffs admit that there was no attorney-client relationship between Plaintiffs and Berkowitz, and claim instead that the parties had a contractual relationship based on the Opinion Letter. Opp. to Mot. Dismiss at 8.

As a preliminary matter, there is a threshold question of whether Plaintiffs have a viable breach of contract claim at all or, at best, only a tort claim for negligent misrepresentation. "Connecticut courts have concluded that claims alleging that the defendant attorney had performed the required tasks but in a deficient manner sounded in tort rather than in contract." *Meyers v. Livingston, Adler, Pulda, Mieklejohn and Kelly, P.C.*, 311 Conn. 282, 294 (2014). Plaintiffs' breach of contract claim is based solely on Berkowitz's failure to provide accurate

information in the Opinion Letter, allegations sounding in tort rather than in breach of contract. *See id.* at 298 ("In addition to the fact that the complaint contains no allegations that the defendant breached any specific contract provision, it relies in part on language typically used in negligence cases.").

In any event, the Court agrees that the Opinion Letter is not a contract. *See Connecticut Nat. Bank v. Voog*, 233 Conn. 352, 366 (1995) ("To be enforceable, a contract must be supported by valuable consideration."); *Martin Printing, Inc. v. Sone*, 89 Conn. App. 336, 344 (2005) ("A promise to be surety for the performance of a contractual obligation, made to the obligee, is binding if (a) the promise is in writing and signed by the promisor and recites a purported consideration; or . . . (c) the promisor should reasonably expect the promise to induce action or forbearance of a substantial character on the part of the promisee or a third person, and the promise does induce such action or forbearance.") (quoting 1 Restatement (Second), Contracts § 88 (1981)). Indeed, Plaintiffs do not allege that the Opinion Letter represented a bargained-for exchange with consideration between Plaintiffs and any party.

The Court also agrees that Plaintiffs do not have a claim as a third-party beneficiary of any contract between Berkowitz and the Park Square West Entities. *See* Def.'s Reply at 3. Plaintiffs rely on *Stowe v. Smith*, where the Connecticut Supreme Court considered whether a plaintiff who was the intended beneficiary of a will had standing to sue an attorney who made a mistake in drafting the will. 184 Conn. at 195.

In *Stowe*, however, the complaint alleged that the "defendant assumed a relationship not only with the testatrix but also with the intended beneficiaries" because "[i]f the defendant thwarted the wishes of the testatrix, an intended beneficiary would also suffer an injury in that after the death of the testatrix the failure of her testamentary scheme would deprive the

beneficiary of an intended bequest." *Id.* at 198. The court therefore found that "the benefit which the plaintiff would have received under a will prepared in accordance with the contract is so directly and closely connected with the benefit which the defendant promised to the testatrix that under the allegations of the complaint the plaintiff would be able to enforce the contract." *Id.*

This case does not involve a will. *See Litvack v. Artusio*, 137 Conn. App. 397, 405 (2012) ("Although the intended beneficiary of a will may have a cause of action for the improper preparation of a testamentary document . . . the plaintiff has cited no authority for imposing such liability on attorneys who entered into a retainer for ordinary legal services.") (citing *Stowe*, 184 Conn. at 198–99); *see also Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves*, 709 F. Supp. 44, 47 n.4 (D. Conn. 1989) ("*Stowe* embodies a narrow exception—essentially limited to wills only—to the rule that an attorney has no duty to a third party."). Although *Stowe* demonstrates that there may be circumstances when a third-party can bring a legal malpractice claim against an attorney, "[a] central dimension of the attorney-client relationship is the attorney's duty of entire devotion to the interest of the client." *Krawczyk*, 208 Conn. at 246 (internal quotation marks and citation omitted). The Connecticut Supreme Court thus has noted the "serious potential for conflicts of interest inherent" in situations that require an attorney to consider the duty of undivided loyalty to the client, but also to a third-party beneficiary. *Id.* at 246–47.

Here, Plaintiffs have not alleged that Plaintiffs were the intended beneficiaries of the attorney-client relationship between Berkowitz and the Park Square West Entities. In fact, the Opinion Letter specifically states that Berkowitz served as counsel to the Park Square West Entities, "in connection with the loan by UCF I Trust 1," referencing Plaintiffs merely as the lender of the mezzanine loan—not as an intended beneficiary as in *Stowe*. *See* Opinion Letter at

12

1, Mot. Dismiss Ex. A, ECF. No. 16-1 ("We [Berkowitz] have acted as counsel to Park Square West Member Associates, LLC, a Connecticut limited liability company ('Borrower') in connection with the loan by UCF I Trust 1, a Delaware statutory trust ('Lender'), to Borrower in the principal amount of $12,000,000.00 (the 'Loan'). We have also acted as counsel to Park Square West Associates, LLC, a Delaware limited liability company ('Associates'); PSWMA I, LLC, a Connecticut limited liability company ('Pledgor'); PSWMA II, LLC, a Connecticut limited liability company ('Subordinated Debtor'); Seabord Realty, LLC, a Connecticut limited liability company ('Subordinated Lender'), and John J. DiMenna, Jr., an individual ('Guarantor').").

In the absence of any express language in the Opinion Letter imposing a contractual obligation on Berkowitz to provide legal services for Plaintiffs, Connecticut law presumes that adverse parties in financial transactions are represented by their own counsel and not by the counsel of their adversaries. *See Krawczyk*, 208 Conn. at 246 ("Courts have refrained from imposing liability when such liability had the potential of interfering with the ethical obligations owed by an attorney to his or her client.") (citations omitted).

While Plaintiffs argue that their reliance on the Opinion Letter would not affect Berkowitz's attorney-client relationship with the Park Square West Entities, *see* Opp. To Mot. Dismiss at 7, a lack of interference with the attorney-client relationship is not the applicable standard. The Connecticut Supreme Court in *Krawczyk* precluded the imposition of liability to third parties that "would not comport with a lawyer's duty of undivided loyalty to the client." 208 Conn. at 246. In a commercial transaction, a lawyer cannot have "undivided loyalty" to her client and also have a legal obligation to the party adverse to her client in the transaction without express language indicating otherwise. *See* CT Rules of Professional Conduct 1.7(a) ("Except as

provided in subsection (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client[.]"); CT Rules of Professional Conduct 1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued . . . ."); *see also Meyers*, 311 Conn. at 301 (finding that allegations "that the defendant breached its duty of undivided loyalty and its duty to follow [the client's] wishes and instructions in its prosecution and settlement of the prior lawsuit are consistent with a claim of legal malpractice that relies on violations of rules 1.7(a) and 1.2(a) of the Rules of Professional conduct as evidence of a breach of the applicable standard of conduct").

Because Plaintiffs are neither a party to a contract with Berkowitz nor the intended third-party beneficiary of a contract between the Park Square West Entities and Berkowitz, Count One, their breach of contract claim against Berkowitz, must be dismissed.

### B. The Breach of the Covenant of Good Faith and Fair Dealing Claim

Plaintiffs also argue that Berkowitz breached the covenant of good faith and fair dealing, and that Plaintiffs suffered money damages as a result. Compl. ¶¶ 33–35. The Court disagrees.

"It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Hoskins v. Titan Value Equities Group, Inc.*, 252 Conn. 789, 793 (2000). A contract or a contractual relationship, therefore, is required to state a claim based on the covenant of good faith and fair dealing. *Id.* ("[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing."); *see also Chapman v. Priceline Grp., Inc.*, 2017 WL 4366716, at *5 (D. Conn. 2017) ("'Most courts decline to find a breach of the covenant apart from a breach of an express

14

contract term.' . . . In other words, 'the claim [that the covenant has been breached] must be tied to an alleged breach of a specific contract term, often one that allows for discretion on the part of the party alleged to have violated the duty.'") (quoting *Landry v. Spitz*, 102 Conn. App. 34, 47 (2007)).

Here, for the same reasons that Plaintiffs lack a viable breach of contract claim, they also lack a viable claim based on the covenant of good faith and fair dealing. Count Two of the Complaint therefore must be dismissed.

### C.  The Negligent Misrepresentation Claim

Finally, Plaintiffs allege that Berkowitz "failed to exercise reasonable care in communicating information related [to] the ownership of PSW Mezzanine Borrower to UCFT" and therefore assert that Berkowitz is liable for negligent misrepresentation. Compl. ¶ 39. Defendants argue that this tort claim is barred by the three-year statute of limitations under Conn. Gen. Stat. § 52-577. Mot. Dismiss at 17–18. Even if Plaintiffs' claims were within the statute of limitations, Plaintiffs have not sufficiently alleged that they reasonably relied on Berkowitz's advice.

To establish a negligent misrepresentation claim in Connecticut, the plaintiff must allege that "[o]ne who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch.*, 202 Conn. 206, 218 (1987) (quoting Restatement (Second) of Torts § 552 (1979)); *see also Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575 (1995) ("We have held that even an innocent misrepresentation

15

of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth.") (citing *Richard v. A. Waldman & Sons, Inc.*, 155 Conn. 343, 346 (1967)).

The Connecticut Supreme Court has explained that "no special relationship is required to state a claim of negligent misrepresentation[.]" *Williams Ford, Inc.*, 232 Conn. at 579 (considering whether newspaper could be held liable for negligently misrepresenting advertising information to automobile dealership groups); *see also Stuart v. Frieberg*, 316 Conn. 809, 842–43 (2015) (quoting *Williams Ford, Inc.*, 232 Conn. at 579–80). "[R]easonableness of reliance is a question for the trier of fact." *Stuart*, 316 Conn. at 842–43 (citing *Coppola Construction Co. v. Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 352 n.6 (2013)).

Plaintiffs, however, have not sufficiently alleged that it was reasonable for them to rely on the advice of Berkowitz, counsel of an adverse party in a financial transaction. *See Krawczyk*, 208 Conn. at 244 ("As a general rule, attorneys are not liable to persons other than their clients for the negligent rendering of services."); *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]") (citation and alteration omitted). Plaintiffs' conclusory allegations in support of the claim of negligent misrepresentation thus fail to cross "the line between possibility and plausibility of entitlement to relief." *See Iqbal*, 556 U.S. at 696) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).[4]

---

[4] In response to the motion to dismiss, Plaintiffs acknowledge that they are aware of information that would establish that Berkowitz "was counsel to a company engaged in a Ponzi scheme," and

16

Count Three of Plaintiffs' Complaint therefore must be dismissed.[5]

## IV.     CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**.

Plaintiffs may serve an Amended Complaint within thirty (30) days of this Order, to the extent they are able to address the deficiencies in the dismissed claims.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of May, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

that Berkowitz's advice misled Plaintiffs as a result of that fraud. *See, e.g.*, Opp. to Mot. Dismiss at 3 (explaining that PSWMA I, LLC did not own the interest in PSW Mezzanine Borrower that it claimed to own, and that PSW Mezzanine Borrower was owned 25% by Seabord Realty, LLC and 75% by various other entities). These claims, suggesting fraud rather than simply negligent misrepresentation, would have to be plead with even more specificity under Rule 9(b) of the Federal Rules of Civil Procedure. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.").

[5] Because the Court has granted the motion to dismiss under Rule 12(b)(6), the Court will not address the argument that Plaintiffs' claim falls outside of the statute of limitations, but the Court will address that claim if necessary if Plaintiffs file an amended complaint that asserts a negligent misrepresentation claim.